## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JAMES C. CHANDLER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-775-D |
| | ) | |
| **MONUMENTAL LIFE INSURANCE** | ) | |
| **COMPANY**, a foreign for-profit | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

**COMES NOW** Plaintiff James C. Chandler (hereafter "Mr. Chandler"), by and through his attorneys of record, LYTLE, SOULÉ & CURLEE, P.C., and for his claims against Defendant Monumental Life Insurance Company (hereafter "Defendant Monumental") hereby states as follows:

## I.    PARTIES, JURISDICTION & VENUE

1.    Mr. Chandler is the spouse and widower of Johnna M. Chandler, deceased.  At all times material herein, Mr. Chandler has been domiciled in Cleveland County, State of Oklahoma;

2.    Defendant Monumental is a for-profit corporation organized and existing under the laws of the State of Iowa with its principal place of business in Cedar Rapids, Iowa, and doing business in the State of Oklahoma, including this District;

1

3.      Pursuant to 28 U.S.C. § 1332, the United States District Court for the Western District of Oklahoma has original jurisdiction over this action because the parties are completely diverse and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00);

4.      Venue is proper in the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Mr. Chandler's claims against Defendant Monumental occurred in this District;

## II.      OPERATIVE FACTS

5.      Mr. Chandler re-alleges and incorporates in full paragraphs one (1) through four (4) above;

6.      In 2004, Banc of America Insurance Services, Inc. ("BOA") mailed solicitations for the purchase of accidental death insurance coverage underwritten by Defendant Monumental to its Bank of America, N.A. customers, including Mr. Chandler;

7.      On or about October 18, 2004, Mr. Chandler acted on this solicitation from BOA on behalf of Defendant Monumental by submitting an application for family accidental death insurance coverage from Defendant Monumental. Defendant Monumental's soliciting agent, BOA, represented to Mr. Chandler that the accidental death insurance would help "***ensure the financial security of [his] loved ones while providing excellent protection at an affordable group rate of $47.00\* per month***";

8.      Defendant Monumental then issued a Certificate of Insurance for Accidental Death Coverage with an effective date of November 15, 2004, Certificate No. J07-5279005 and Policy No. MZ0910790H0004F (hereafter the "Policy") which named Mr. Chandler as the principal insured;

9.      As the principal insured, Mr. Chandler was the person entitled to the "Member Benefit" of $250,000.00.  Under the Policy, Mr. Chandler's spouse, Johnna, was insured for up to 50 percent of the member benefit;

10.     According to the terms of the Policy, benefits payable thereunder would be reduced by 50 percent when the insured reached age 70 and 25 percent when the insured reached age 75;

11.     In consideration for insurance coverage under the Policy, Mr. Chandler paid  monthly premiums to Defendant Monumental;

12.     Because Mr. Chandler always paid the monthly premium due under the Policy to Defendant Monumental, the Policy was in full force and effect at all times material herein;

13.     By timely making each premium payment to Defendant Monumental, Mr. Chandler expected that Defendant Monumental would pay the full benefits due in the event that either he or Johnna died because of an accident covered by the Policy;

14.     Defendant Monumental promised the Chandlers a measure of financial security and peace of mind in the event of a covered accidental death;

15.    The Chandlers expected and Defendant Monumental promised to provide benefits to a surviving beneficiary should an insured suffer a covered accidental death;

16.    Defendant Monumental broke its promise to provide benefits to Mr. Chandler when Johnna suffered a covered, unexpected and accidental death;

17.    On or about May 9, 2011, Mr. Chandler arrived home from work at approximately 2:30 p.m.   After parking his car in the driveway of his home, Mr. Chandler could see his wife Johnna reclining in a chaise lounge chair on the patio;

18.    Once Mr. Chandler changed out of his work clothes, he went outside to the patio to let his wife know he was home;

19.    As Mr. Chandler approached Johnna, he saw that her face and the tops of her legs were sunburned.  When Mr. Chandler tried to wake Johnna, he received no response.  Mr. Chandler called 911 after he was unable to detect a pulse and obtain a response from Johnna;

20.    While waiting for emergency personnel to arrive, Mr. Chandler tried desperately to revive his wife using CPR;

21.    Upon arrival, emergency personnel advised Mr. Chandler to stop his revival efforts because it was apparent that his wife of 49 years had died;

22.    Johnna Chandler was 74 years old at the time of her accidental death;

23.    As required by law, an examination was performed on Johnna by the Office of the Chief Medical Examiner for the State of Oklahoma.   According to the

Medical Examiner, Johnna's death was an "*accident*" caused by "probable cyclobenzaprine[1] toxicity with heat exposure";

24.     On or about January 2, 2013, Mr. Chandler made a claim with Defendant Monumental for accidental death benefits payable under the Policy (the "Claim").   In compliance with Defendant Monumental's demands, Mr. Chandler submitted **(i)** a certified copy of Johnna's death certificate; **(ii)** a medical authorization so that Defendant Monumental could independently obtain medical records and investigate Johnna's medical history and accidental death; **(iii)** the original Certificate of Insurance; **(iv)** copies of the public report prepared by the Medical Examiner's office; **(v)** the address and phone number for the Norman, Oklahoma Police Department and **(vi)** the address and phone number for the Sooner Pharmacy, the pharmacy where Johnna's Flexeril prescription was regularly filled;

25.     Three (3) weeks later, Defendant Monumental sent a letter to Mr. Chandler stating that they were gathering additional information from the Norman Police Department, the Sooner Pharmacy, and the Medical Examiner's Office.   In addition, Defendant Monumental demanded that Mr. Chandler "submit a written explanation of the circumstances surrounding Johnna's death":

26.     Complying with Defendant Monumental's demand, Mr. Chandler sent his written account of the accidental death of his wife;

---

[1] "Flexeril" is the brand name for cyclobenzaprine.

27.    Rather than providing the promised financial security expected by Mr. Chandler following his wife's accidental death, Defendant Monumental denied the Claim on March 21, 2013;

28.    In its denial letter, Defendant Monumental stated that it obtained the medical examiner report, the police report, and the pharmacy records and then "referred the file to our Medical Consultant for review";

29.    According to Defendant Monumental's "Medical Consultant," Johnna's Flexeril level exceeded the therapeutic amount, i.e., "the level of cyclobenzaprine was in the lethal range and would have caused death without heat exposure." Defendant Monumental did not specify any other testing, evaluation or investigation performed in support of its denial;

30.    Defendant Monumental has neither identified its "Medical Consultant" nor disclosed the credentials and qualifications of such person;

31.    Defendant Monumental further stated that Johnna's death was excluded under the Policy pursuant to the following provision:

> "[Defendant Monumental] will not pay a benefit for a Loss which is caused by, results from, or contributed to by:
>
> …
>
> [the] taking of any drug, medication, narcotic, or Hallucinogen, unless as prescribed by a Physician."

32.     Shocked at this denial, Mr. Chandler sent another letter to Defendant Monumental to remind them that Johnna *did in fact have a prescription* for Flexeril, a medicine she had taken for many years;

33.     Defendant Monumental sent another denial letter which reiterated the vague and unsupported conclusion of its unidentified "Medical Consultant," i.e., Johnna did not take Flexeril "as prescribed by a physician" and therefore no benefits were payable to Mr. Chandler under the Policy;

## III.    COUNT NO. 1 – BREACH OF CONTRACT

34.     Mr. Chandler re-alleges and incorporates in full paragraphs one (1) through thirty-three (33) herein;

35.     At all times relevant herein, Mr. Chandler and Defendant Monumental had in full force and effect an accidental death insurance policy whereby Mr. Chandler would tender premium payments to Defendant Monumental in exchange for insurance coverage payable to either he or his wife, Johnna, in the event either died accidentally;

36.     Said Policy constituted an express contract wherein both parties understood that Mr. Chandler would pay monthly premiums to Defendant Monumental in exchange for accidental death insurance coverage.  Premiums were always paid by Mr. Chandler and the Policy was in full force and effect on May 9, 2011;

37.     Insurance benefits due to Mr. Chandler under the Policy for the covered accidental death of his wife, Johnna, were not paid by Defendant Monumental as promised;

38.     Defendant Monumental's failure to pay insurance benefits due to Mr. Chandler pursuant to the terms of the Policy constituted a breach of the same;

39.     As a result of Defendant Monumental's breach of the Policy, Mr. Chandler was not paid insurance benefits owed to him by Defendant Monumental.

**WHEREFORE**, above premises considered, Plaintiff James C. Chandler, Individually, and on behalf of his spouse Johnna M. Chandler, requests that this Court enter judgment against Defendant Monumental and in favor of Plaintiff as follows: **(i)** contract damages in the amount of $62,500.00; **(ii)** all consequential damages which naturally flowed from the breach of the contract; **(iii)** reasonable costs and attorneys' fees; **(iv)** pre- and post-judgment interest and **(v)** any and all relief deemed equitable by this Court.

## IV.     COUNT NO. 2 – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

40.     Mr. Chandler re-alleges and incorporates in full paragraphs one (1) through thirty-nine (39) herein;

41.     Defendant Monumental breached the covenant of good faith and fair dealing implied in the Policy.  Specifically,

i.      Defendant Monumental refused  to pay accidental death benefits to Mr. Chandler which Defendant Monumental knew were due to him pursuant to the terms of the Policy;

ii.     Defendant Monumental neither conducted a reasonable and proper investigation of the Claim nor did it obtain necessary information prior to and in connection with the original denial and following the receipt of the additional information from Mr. Chandler;

iii.    Defendant Monumental intentionally applied an ambiguous Policy exclusion to the detriment of  Mr. Chandler, its insured, when Defendant Monumental knew or should have known that such an exclusion was both ambiguous and otherwise inapplicable to the Claim;

iv.     Defendant Monumental misrepresented the materials it relied upon in denying the Claim to Chandler;

v.      Defendant Monumental intentionally and in bad faith failed to disclose the identity and credentials of a "Medical Consultant" who made no inquiry of Mr. Chandler, Johnna's treating and prescribing physicians and/or pharmacists regarding Johnna's Flexeril prescriptions, history of use and other prescribed medications.  Defendant Monumental did not perform a good

faith investigation of the medical, pharmacological, toxicology and other issues relating to Johnna's covered accidental death;

vi.      Defendant Monumental failed to perform a reasonable investigation of the toxicology circumstances and details surrounding the accidental death of Johnna Chandler. Specifically, Defendant Monumental made no effort to investigate the actual basis for elevated Flexeril levels reportedly present in post-mortem blood samples analyzed by the Office of the Chief Medical Examiner of Oklahoma and either disregarded or did not obtain Johnna's pharmacy records indicating that she had a lengthy history of taking Flexeril in accordance with generally accepted dosage recommendations and the instructions of her medical providers;

vii.     Defendant Monumental refused to provide Mr. Chandler with the material(s) and/or significant information it relied upon in denying the Claim;

viii.    Defendant Monumental intentionally disregarded the Medical Examiner's determination that Johnna's death was "accidental" so that it could deny benefits payable to Mr. Chandler under the Policy;

ix.     Defendant Monumental intentionally relied on an exclusion it knew or should have known to be legally unenforceable to deny coverage granted by the Policy;

x.      Defendant Monumental took a position which it knew stood in direct contradiction to the known and reasonable expectations of its insured, Mr. Chandler;

xi.     Defendant Monumental made no attempt to effectuate a prompt, fair, and equitable settlement of the Claim once liability had become reasonably clear;

xii.    Pursuant to its standard claim practices, Defendant Monumental forced Mr. Chandler to retain counsel in order to obtain payment for benefits it knew were payable to Mr. Chandler;

42.    Each of these specific allegations illustrates the bad faith conduct engaged in by Defendant Monumental.  This list is non-exhaustive and may be amended as more bad faith conduct is discovered throughout the course of litigation;

43.    As a result of Defendant Monumental's bad faith conduct, Mr. Chandler has suffered economic and non-economic damages.

**WHEREFORE**, above premises considered, Plaintiff James C. Chandler hereby requests that this Court enter judgment against Defendant Monumental and in favor of Plaintiff as follows: **(i)** exemplary damages in an amount to be determined by a jury; **(ii)** compensatory damages in excess of $75,000.00; **(iii)** pre- and post-

judgment interest; **(iv)** reasonable costs and attorneys' fees; and **(v)** any and all relief

deemed equitable by this Court.

Respectfully submitted,
**LYTLE, SOULÉ & CURLEE, P.C.**


/s Michael C. Felty
Michael C. Felty, OBA No. 10804
Matthew K. Felty, OBA No. 31057
**LYTLE, SOULÉ & CURLEE, P.C.**
1200 Robinson Renaissance
119 N. Robinson Avenue
Oklahoma City, OK 73102
(405) 235-7471 – Telephone
(405) 232-3852 – Facsimile
felty@lytlesoule.com
mkfelty@lytlesoule.com

*Attorneys for Plaintiff James C. Chandler*

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**